OPINION OF THE COURT
Jones, J.
 Absent a manifestation of a defendant’s consent thereto, blood samples taken without a court order other than in conformity with the provisions of subdivisions 1 and 2 of section 1194 of the Vehicle and Traffic Law are inadmissible in prosecutions for operating a motor vehicle while under the influence of alcohol under section 1192 of that law. Beyond that, blood samples taken without a defendant’s consent are inadmissible in prosecutions under the Penal Law unless taken pursuant to an authorizing court order.
In People v Moselle, defendant was involved in an automobile accident on March 17, 1979 in which his vehicle collided with another vehicle operated by Paul Barrett. *102 Within minutes Sergeant Caffery of the Erie County Sheriff’s Department arrived at the scene. Barrett was then being placed in an ambulance. Defendant, who was still seated behind the wheel of his vehicle when Caffery arrived, was shortly transferred to the ambulance, and both men were then transported to the hospital.[1]
Sergeant Caffery conducted an on-the-scene investigation, after completion of which he proceeded to the hospital. Detecting a strong odor of alcohol emanating from defendant, Caffery directed a physician to take a sample of his blood. The People offered no proof that defendant consented to this procedure, that he had been arrested,[2] or that the procedural requirements of section 1194 of the Vehicle and Traffic Law were observed. Analysis of the blood sample so taken about an hour after the accident revealed the presence of .17 of one per centum by weight of alcohol in defendant’s bloodstream.
On recommendation of the Grand Jury, a prosecutor’s information was filed charging defendant with operating a motor vehicle while he had .10 of one per centum or more of alcohol in his blood (Vehicle and Traffic Law, § 1192, subd 2). No Penal Law charge was ever placed against him.
On October 2, 1980 after a jury trial at which testimony was received over defendant’s objection as to the results of his blood analysis and the jury was charged in effect that if they found that the police had reasonable grounds to believe that defendant was operating a motor vehicle while his ability to do so was impaired they could consider evidence of the results of such analysis, defendant was convicted in Town Court, Town of Elma, of violation of subdivision 2 of section 1192. On appeal Erie County Court reversed the conviction and dismissed the accusatory instrument.
In People v Daniel, on October 20, 1979 a van operated by defendant collided with two other motor vehicles as a *103 result of which a passenger in one of the other vehicles was killed. Investigating police officers observed defendant lying semiconscious on the ground and on looking into the van found a cold, half-full bottle of beer on the console and two empty bottles on the dashboard and on the floor. Defendant was taken by ambulance to the hospital where Officer Willis requested a registered nurse to take a blood sample from him. Defendant was not under arrest at the time, was not asked for his consent, and neither consented nor refused to give the blood sample. While the blood was being drawn defendant regained consciousness. Subsequent analysis revealed the presence of .22 of one per centum by weight of alcohol in defendant’s bloodstream.
Defendant was indicted for criminally negligent homicide and for violations of subdivisions 2 and 3 of section 1192 of the Vehicle and Traffic Law (operating a motor vehicle while he had .10 of one per centum or more of alcohol in his blood and driving while intoxicated). His pretrial motion to suppress the results of the blood test was granted by Erie County Court and a motion to reargue was denied. On appeal the Appellate Division unanimously affirmed.
In People v Wolter, on January 7,1980 the motor vehicle being driven by defendant collided head-on with another motor vehicle as a consequence of which the operator of the other vehicle was instantly killed. The investigating Sheriff’s deputy found defendant in a semiconscious condition behind the steering wheel of his vehicle and detected the odor of alcohol. Defendant was removed to the hospital in an ambulance. The deputy there placed defendant under arrest for driving while intoxicated and for failure to keep right. The deputy gave defendant, then fully conscious, his constitutional preinterrogation warnings and advised him in accordance with the prescriptions of section 1194 of the Vehicle and Traffic Law. Defendant refused to submit to a blood test. Following a telephone conversation with the District Attorney, the deputy then directed a physician to draw a sample of defendant’s blood, less than two hours after the accident. Subsequent analysis disclosed a blood alcohol content of .23 of one per centum by weight.
*104 Defendant was indicted for manslaughter in the second degree (Penal Law, § 125.15, subd 1), for assault in the second degree (Penal Law, § 120.05, subd 4), for driving while intoxicated in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law, and for violations of other sections of that law. After a pretrial suppression hearing, Livingston County Court ruled that, while the results of the blood test could not be used in connection with the prosecution for driving while intoxicated, they could be used on the manslaughter trial, and accordingly severed the driving while intoxicated charge for separate trial. After selection of a jury for trial on the remaining charges defendant’s plea of guilty to criminally negligent homicide was accepted in full satisfaction of all counts in the indictment, and the severed driving while intoxicated charge was dismissed with prejudice to resubmittal.
On appeal the Appellate Division reversed defendant’s conviction, holding that the explicit provision of subdivision 2 of section 1194 of the Vehicle and Traffic Law (that upon refusal to consent thereto, “the test shall not be given”) foreclosed use of the results of the test on the prosecution of the charges under the Penal Law.
In each of these cases permission to appeal has been granted the People by a Judge of our court.
These three cases present varying aspects of the right of the People to introduce the results of chemical analysis of blood samples taken from a defendant without his consent following an automobile accident, for the purpose of proving the presence of a significant amount of alcohol in the defendant’s bloodstream. In each case there should be an affirmance of the order denying the People the right to introduce such evidence.
At the outset we observe that our disposition in none of these cases is predicated on constitutional grounds. Because our disposition of these appeals is premised on statutory and nonconstitutional legal principles, we have no occasion to reach or consider any underlying constitutional arguments.
Our decision is grounded on two enactments of our State Legislature and the absence of any other. Subdivisions 1 *105 and 2 of section 1194 of the Vehicle and Traffic Law in effect at the time the blood samples in these cases were taken provided:
“1. Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic or drug content of his blood provided that such test is administered at the direction of a police officer:
“(1) having reasonable grounds to believe such person to have been driving in violation of any subdivision of section eleven hundred ninety-two and within two hours after such person has been placed under arrest for any such violation, or
“(2) within two hours after a breath test, as provided in section eleven hundred ninety-three-a of this chapter, indicates that alcohol has been consumed by such person and in accordance with the rules and regulations established by the police force of which he is a member.
“2. If such person having been placed under arrest or after a breath test indicates the presence of alcohol in his system and having thereafter been requested to submit to such chemical test, refuses to submit to such chemical test, the test shall not be given and a report of such refusal shall be forwarded by the police officer under whose direction the test was requested to the commissioner within seventy-two hours and the commissioner shall revoke his license or permit to drive and any non-resident operating privilege; provided, however, the commissioner shall grant such person an opportunity to be heard, unless such opportunity is waived by such person, and provided further, however, that no license, permit or non-resident operating privilege shall be revoked because of a refusal to submit to such chemical test unless the hearing officer is satisfied that the person was given sufficient warning, in clear and unequivocal language, prior to such refusal that such refusal to submit to such chemical test may result in the revocation of his license or operating privilege whether or not he is found guilty of the charge for which he was arrested and that the person persisted in his refusal.” *106 GPL 240.40, enacted by chapter 412 of the Laws of 1979, effective January 1, 1980, provides:
“§ 240.40 Discovery; upon court order
“1. Upon motion of a defendant against whom an indictment, superior court information, prosecutor’s information, or information is pending, the court in which such accusatory instrument is pending:
“(a) must order discovery as to any material not disclosed upon a demand pursuant to section 240.20, if it finds that the prosecutor’s refusal to disclose such material is not justified, and (b) may order discovery with respect to any other property, which the people intend to introduce at the trial, upon a showing by the defendant that discovery with respect to such property is material to the preparation of his defense, and that the request is reasonable. Upon granting the motion pursuant to paragraph (b) hereof, the court shall, upon motion of the people showing such to be material to the preparation of their case and that the request is reasonable, condition its order of discovery by further directing discovery by the people of property, of the same kind or character as that authorized to be inspected by the defendant, which he intends to introduce at the trial.
“2. Upon motion of the prosecutor, and subject to constitutional limitation, the court in which an indictment, superior court information, prosecutor’s information or information is pending; (a) must order discovery as to any property not disclosed upon a demand pursuant to section 240.30, if it finds that the defendant’s refusal to disclose such material is not justified; and (b) may order the defendant to provide non-testimonial evidence. Such order may, among other things, require the defendant to:
“(i) Appear in a line-up;
“(ii) Speak for identification by witness or potential witness;
“(iii) Be fingerprinted;
“(iv) Pose for photographs not involving reenactment of an event;
“(v) Permit the taking of samples of blood, hair or other materials from his body in a manner not involving an *107 unreasonable intrusion thereof or a risk of serious physical injury thereto;
“(vi) Provide specimens of his handwriting;
“(vii) Submit to a reasonable physical or medical inspection of his body.
“This subdivision shall not be construed to limit, expand, or otherwise affect the issuance of a similar court order, as may be authorized by law, before the filing of an accusatory instrument consistent with such rights as the defendant may derive from the constitution of this state or of the United States.
“3. An order pursuant to this section may be denied, limited or conditioned as provided in section 240.50.”
The disposition in Moselle turns on the express provision of subdivision 2 of section 1194. That section, treating of the taking of samples of blood for the purpose of proving alcoholic content in connection with prosecution for violation of provisions of the Vehicle and Traffic Law, authorizes the administration of chemical blood tests for such purpose when the defendant has “been placed under arrest or after a breath test indicates the presence of alcohol in his system” but provides that if the person “refuses to submit to such chemical test, the test shall not be given.” In this instance the police had designedly refrained from arresting defendant in conformity with an existing operational policy, and there was no proof that any breath test had been administered. Accordingly, neither of the prerequisites activating the authorization for giving chemical blood tests was established, and the statute therefore provided no authority to take the blood sample.
A similar analysis dictates an affirmance in People v Wolter to the extent that the prosecution in that case was denied the right to introduce the results of the blood test with respect to the charge of driving while intoxicated. While defendant had been arrested in that instance, thus triggering the statutory provisions, it was also undisputed that he had refused to submit to the test thus rendering applicable the statutory prohibition against giving the test.
*108 We turn then to the issue presented in People v Daniel and also in People v Wolter — whether the results of a chemical test of a blood sample taken without the defendant’s consent and without a court order can subsequently be introduced on a prosecution for violation of a section of the Penal Law. We conclude that they cannot. We do not rely, however, for this conclusion on the provisions of subdivisions 1 and 2 of section 1194 of the Vehicle and Traffic Law. In our view, that statutory enactment only authorizes the giving of chemical blood tests for prosecutions for violations of the Vehicle and Traffic Law; it has no application to charges brought under sections of the Penal Law, notwithstanding that the charged Penal Law violations arise out of the operation of a motor vehicle. To this extent we differ with the rationale on which the Appellate Division premised its determination in Daniel.
The critical question presented is whether, in the absence both of statutory authority and of a court order, a blood sample may be taken from a person without his consent for use in a subsequent criminal prosecution. Our very recent decision in Matter of Abe A. (56 NY2d 288) presages the answer. There we held that a court order authorizing the taking of a blood sample from a suspect may issue prior to the filing of an accusatory instrument provided that the issuing court finds that there is “(1) probable cause to believe the suspect has committed the crime, (2) a ‘clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable” (at p 291). We may assume (without deciding) that these three factual prerequisites might be satisfied in both Daniel and Wolter. It is fatal, however, that there was no court order authorizing the taking of the blood samples in either Daniel or Wolter.
It will be suggested, nevertheless, that in discovery procedures in criminal matters the existence of “exigent circumstances” is often held to excuse the failure to obtain a court order where the evidence sought (or here, by extension, its probative worth) might disappear or be lost by the expenditure of the time necessarily required to *109 obtain the order. While the existence of exigent circumstances may excuse the failure to obtain a court order, their existence does not provide a source of authority to conduct discovery.
We return then to consideration of the basic authority for taking blood samples. No authority is cited to us recognizing any common-law right to take blood samples in the absence of a court order (cf. Matter of Abe A., 56 NY2d 288, 293-294, supra). More significant, and dispositive in this instance, is our conclusion, after examining the available legislative history associated with the enactment of CPL 240.40, that the Legislature in consequence of its enactment of that statutory provision (as well as its prior adoption of section 1194 of the Vehicle and Traffic Law) has preempted authorization and regulation of the taking of blood samples and mandated the prior issuance of a court order except that chemical blood tests may be given in conformity with section 1194 of the Vehicle and Traffic Law.
It is not seriously challenged that section 1194 has preempted the administration of chemical tests for determining alcoholic blood content with respect to violations under section 1192 of the Vehicle and Traffic Law. The detail of the statutory prescriptions and the positioning of the section in the Vehicle and Traffic Law leave no room for doubt in this regard. It is this conclusion which mandates affirmance of the exclusion of the results of the blood test in Moselle, no authority for the administration of the test in that case being found in section 1194.
We similarly conclude that the Legislature pre-empted authorization for the administration of blood tests for use in other criminal prosecutions by the enactment of CPL 240.40. The legislative proposal was a Governor’s program bill, recommended by the Office of Court Administration, similar to one recommended by the Judicial Conference, and drafted after consultation with the State Bar Association, the State District Attorney’s Association, the Legal Aid Society, and the Senate and Assembly Codes Committees. The bill was recited to have been drafted to meet constitutional requirements and to remedy prior discovery *110 which had been “haphazard and unregulated”.[3] Reference is found in the Governor’s bill jacket (Memorandum of Office of Richmond County District Attorney, June 25, 1979) to the “procedure available to each side for protective orders” (thus impliedly recognizing the statute as the exclusive premise for taking blood samples). Any lingering doubt that this legislation was intended to blanket the subject (except as the Legislature itself might additionally provide) rather than merely to constitute a partial piece of special legislative regulation is dispelled when note is taken of the last sentence of subdivision 2: “This subdivision shall not be construed to limit, expand or otherwise affect the issuance of a similar court order, as may be authorized by law, before the filing of an accusatory instrument consistent with such rights as the defendant may derive from the constitution of this state or of the United States.” (Emphasis added.) No room is then left for the taking of samples of blood otherwise than pursuant to a court order issued under CPL 240.40 or a court order otherwise authorized by law (or in conformity with § 1194). The negative inference is that the taking of blood in any other manner is foreclosed.[4]
No court order having been issued for the taking of blood samples for prosecution of charges under the Penal Law in either Daniel or Wolter, the results of the tests of the blood samples illegally taken were properly suppressed.[5]
*111 Accordingly, the order of Erie County Court in Moselle and the orders of the Appellate Division in Daniel and Wolter should be affirmed.

. Barrett later died from injuries suffered in the accident.

. Indeed, at trial the Assistant District Attorney informed the court that in cases . where a fatality occurred as a result of an automobile accident it was police practice not to make any arrests but in conducting their investigations to compile all information and to present that information to the District Attorney’s office for him to make the prosecutorial decisions.

. In the Governor’s memorandum, the proposal, relating to more than discovery of blood samples, was described as “including, for the first time, a procedure for discovery on demand rather than on motion and court order.”

. The dissenter’s submission that the Legislature in enacting CPL 240.40 intended to address no more than discovery “in the course of an ongoing criminal proceeding” (at p 111), is refuted by the inclusion of the last sentence of subdivision 2 of the section, quoted above. The explicit recognition there of the possibility of issuance of court orders for discovery purposes “before the filing of an accusatory instrument” (and the use of the word “defendant” in a more general meaning than one against whom a criminal proceeding has already been commenced) confirms that the Legislature had within its contemplation a broad all-inclusive scope of consideration.

. It will be observed that while the sample of defendant’s blood in Wolter was taken on January 7, 1980, after the effective date of CPL 240.40 (Jan. 1, 1980), the sample of blood in Daniel was taken prior to that date on October 20, 1979. It may be suggested, therefore, that strictly speaking the statutory provision on which we ground our disposition of the appeal in Daniel had not yet become effective. Nonetheless the statute (L 1979, ch 412) became law on July 5,1979, and the pre-emptive effect of the legislative action must be held to stem from that date.