THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CHRISTOPHER DIXON, Respondent.

Second Department, July 24, 1989

## APPEARANCES OF COUNSEL

*Patrick Henry, District Attorney (Steven A. Hovani* and *Glenn Green* of counsel), for appellant.

No appearance on behalf of respondent.

## OPINION OF THE COURT

KOOPER, J.

The question to be resolved on appeal is whether the results of a blood test conducted on an unconscious defendant pursuant to Vehicle and Traffic Law § 1194 may be admitted at trial in respect to both Penal Law and Vehicle and Traffic Law violations arising from the same incident. For the reasons that follow, we answer the foregoing question in the affirmative, and accordingly, reverse the order insofar as appealed from.

### I.

On July 19, 1986, at approximately 5:35 P.M., the defendant Christopher Dixon was proceeding in a westerly direction on Edgewood Avenue in Smithtown, New York, when a witness in an adjacent lane who was traveling in the opposite direction observed the defendant's red Datsun slowly traverse the double yellow dividing line and swerve into oncoming traffic. The defendant's automobile collided with a gray station wagon which had been traveling in an easterly direction. The witness, a Mr. Kevin Peterson—who was a certified emergency medical technician—pulled over, exited his vehicle, and began rendering aid to the injured parties in the gray station wagon. Mr. Peterson noticed that a young girl who had been a passenger in the station wagon was lying on the ground, having sustained what appeared to be a serious head injury. Thereafter, Mr. Peterson walked over to the defendant's automobile and observed him slumped over the steering wheel in an unconscious state.

While attempting to perform certain first aid procedures— without success—Mr. Peterson "observed a large, a very large alcohol smell" on the defendant's breath and noticed beer cans on the front seat and a cooler on the back seat. Subsequently, Police Officer Peter Germond arrived at the scene and similarly found the defendant in an unconscious state. Germond testified that he, too, smelled alcohol on the defendant's breath.

Approximately 10 minutes after the accident occurred an ambulance arrived. The defendant was brought to St. John's Hospital where he was treated by a Dr. Serge Dos, who ascertained that the defendant—on whom he smelled alcohol —had sustained multiple injuries to the chest and abdomen. After checking on the defendant a number of times in the treatment room and discovering that he was still unconscious, Officer Germond placed the defendant under arrest, issued a field appearance ticket to be given to the defendant by the hospital staff, and requested that Dr. Dos draw blood for testing from the defendant, which was accomplished within one hour of the defendant's arrest. The results of the test disclosed that the defendant was legally intoxicated. Subsequently, the defendant was charged with various crimes under both the Vehicle and Traffic Law and the Penal Law.[1]

## II.

Thereafter, the defendant moved to suppress the results of the blood test. After finding that the defendant was unable to respond to Officer Germond's request that he submit to a blood test and determining that the blood sample had been secured in conformity with Vehicle and Traffic Law § 1194, the hearing court—relying on the Court of Appeals decision in *People v Moselle* (57 NY2d 97)—reasoned that the blood test results were admissible with respect to violations of the Vehicle and Traffic Law, but inadmissible with respect to the counts of the indictment charging crimes under the Penal Law. The People now appeal, arguing, *inter alia*, that the hearing court erred in limiting the admissibility of the blood test results to prosecution of the Vehicle and Traffic Law offenses charged in the indictment. We agree.

## III.

Vehicle and Traffic Law former § 1194 (1), applicable at the

---

1. By a 19-count indictment, the defendant was charged with operating a motor vehicle while under the influence of alcohol, as a felony (two counts); assault in the second degree (five counts); vehicular assault in the first degree (four counts); vehicular assault in the second degree (four counts); aggravated unlicensed operation of a motor vehicle in the first degree; aggravated unlicensed operation of a motor vehicle in the second degree; operating a motor vehicle without financial security; and driving without a valid driver's license.

time of the accident,[2] provided, in pertinent part, that, "[a]ny person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical test, of his breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of his blood provided that such test is administered at the direction of a police officer". The foregoing provision establishes the means by which a blood sample may be obtained without the express consent of a motorist who is suspected of operating a vehicle in violation of Vehicle and Traffic Law § 1192 provided that there exists reasonable cause to believe a violation has occurred and that the chemical test is administered within two hours of the motorist's arrest (see, People v Kates, 53 NY2d 591; People v Mills, 124 AD2d 600, 601; cf., People v Mertz, 68 NY2d 136). Accordingly, "Vehicle and Traffic Law [former] § 1194 (1) permits a blood sample to be obtained from an individual who is either unconscious or otherwise incapable of giving consent without the necessity of obtaining a court order" (People v Mills, supra, at 601; People v Kates, supra).

We preface our substantive discussion by observing that the hearing court's determination concerning the People's compliance with the mandate of Vehicle and Traffic Law § 1194 is not an issue presented for our review on appeal. Accordingly, the narrow focus of our inquiry relates to the admissibility of the blood test results with respect to Penal Law violations in light of the People's compliance with the statutory procedure outlined in Vehicle and Traffic Law § 1194. When so viewed, it must be concluded that the hearing court erred in confining the admissibility of the test results to the counts of the indictment charging the defendant with violations of the Vehicle and Traffic Law. The hearing court's determination to the contrary rests upon a narrow construction of the Court of Appeals holding in People v Moselle (57 NY2d 97, supra).

In Moselle, the Court of Appeals was confronted with circumstances in which the People failed to comply with the mandate of Vehicle and Traffic Law § 1194 in securing the blood samples which they sought to admit at trial. In 2 of the 3 cases presented for review in Moselle, the defendants from whom blood samples had been obtained were charged with

2. Although Vehicle and Traffic Law § 1194 was amended in 1988 (see, L 1988, ch 406, §§ 7-9), the newly enacted provision creates no substantive changes with respect to a motorist's implied consent to chemical testing (compare, Vehicle and Traffic Law former § 1194 [1] with present Vehicle and Traffic Law § 1194 [2] [a] [1], [2]).

violations of both the Vehicle and Traffic Law and the Penal Law. As part of their appellate theory, the People argued, *inter alia,* that any failure to comply with Vehicle and Traffic Law § 1194 should not be construed to preclude admission of the blood test results with regard to violations arising under the Penal Law[3] *(see, People v Moselle, supra,* at 100, 101). The court disagreed, however, determining that there existed an alternative statutory methodology for procuring blood samples in Penal Law cases by court order pursuant to the then newly enacted CPL 240.40, with which the People had failed to comply. Having failed to establish compliance with either of the two relevant statutory means of securing blood samples, the People were foreclosed from seeking admission of the test results at trial with respect to both the Penal Law and Vehicle and Traffic Law offenses charged in the indictments.

Although in response to the People's appellate contentions, the Court of Appeals discussed Vehicle and Traffic Law § 1194 and CPL 240.40 as distinct and separate statutory procedures, we discern nothing in the *Moselle* holding which would preclude the admission of blood test results in respect to either Penal Law or Vehicle and Traffic Law offenses where the samples are procured in conformity with statutory procedure. Nevertheless, certain courts and commentators have professed to discern from the *Moselle* court's holding a requirement that there exist a "nexus" between the statutory means by which the blood sample is obtained and the nature of the offenses charged *(see, People v Wade,* 118 Misc 2d 330, 340; *see also, People v Curran,* 90 AD2d 661; 2 Callaghan's Criminal Procedure in New York, Criminal Evidence § 7:12 [3d ed]). We have previously construed the *Moselle* holding to the contrary in an implied consent context *(see, People v Hall,* 91 AD2d 1002, *affd* 61 NY2d 834), and we reaffirm our prior determination today. A closer review of the *Moselle* holding buttresses our conclusion in this respect.

## IV.

At the outset, it must be observed that the *Moselle* determination is fundamentally distinguishable from the case at bar

---

**3.** In one of the cases decided as part of the *Moselle* trilogy, the hearing court—after finding noncompliance with Vehicle and Traffic Law § 1194—did, in fact, suppress the blood test results with respect to Vehicle and Traffic Law violations, but *not* as to Penal Law offenses *(see, People v Wolter,* 83 AD2d 187, 189-190, *affd* 57 NY2d 97).

in terms of its operative facts, actual holding, and the narrow legal question to which the court's inquiry was directed. The manner in which the Court of Appeals framed the legal issue to be resolved on appeal confirms this assessment. In prefacing its analysis, the court declared that, "[t]he critical question presented is whether, in the absence *both of statutory authority* and of a court order, a blood sample may be taken from a person without his consent for use in a subsequent criminal prosecution" *(People v Moselle, supra,* at 108 [emphasis supplied]). Notably, none of the blood samples taken from the motorists in the *Moselle* trilogy of cases was obtained by virtue of the implied consent provision of the Vehicle and Traffic Law around which the present appeal centers. Accordingly, the court neither held—nor was required to hold—that blood test results properly obtained pursuant to Vehicle and Traffic Law § 1194 were nevertheless inadmissible with respect to Penal Law offenses charged in the same indictment and arising out of the same transaction.[4]

More fundamentally, it is a basic tenet of the law of evidence that in order to be admissible, evidence must be relevant, material and competent (Richardson, Evidence § 4, at 2 [Prince 10th ed]; *cf.,* Family Ct Act § 744 [a]; CPL 70.10 [1]; *People v De Simone,* 225 NY 261, 267). It has been observed that evidence "is competent when it has been obtained in such a way, from such a source, and is in such a form that it is deemed proper to admit it" (1 Wharton's Criminal Evidence § 91, at 329 [Torcia, 14th ed]). At bar—and in contrast to the circumstances in *Moselle (supra)*—there is no dispute that the blood sample was obtained in complete conformity with applicable statutory authority. Nor does there exist any constitutional proscription precluding the State from compelling a motorist to submit to a blood test under the circumstances presented *(see, e.g., Schmerber v California,* 384 US 757; *see also, South Dakota v Neville,* 459 US 553; *People v Kates,*

---

4. It bears noting that the result actually achieved by the *Moselle* holding was the uniform *exclusion* of the test results rather than their selective admission or exclusion in respect to different counts in the same indictment. Furthermore, in *People v Casadei* (66 NY2d 846), the Court of Appeals rejected the converse of the result achieved by the hearing court at bar, i.e., the court concluded that the People's exclusive reliance upon CPL 240.40 in obtaining blood samples where violations of the Vehicle and Traffic Law *and* Penal Law were charged, did not preclude the admission of the blood test results in respect to the Vehicle and Traffic Law offenses merely because a Vehicle and Traffic Law methodology was not employed to obtain the samples.

*supra; People v Thomas,* 46 NY2d 100, *appeal dismissed* 444 US 891). In *People v Kates (supra),* a case in which the defendant was charged with both Vehicle and Traffic Law and Penal Law offenses, the Court of Appeals sanctioned the removal of blood from an unconscious motorist, determining that while Vehicle and Traffic Law § 1194 precluded the taking of blood over a motorist's objection, the removal of blood from an unconscious motorist in conformity with the Vehicle and Traffic Law was nevertheless permissible in the absence of the motorist's "refusal" to provide the sample. In so holding, the court specifically determined that "subdivision 2 [of Vehicle and Traffic Law § 1194] cannot be read as requiring the driver's express consent because that would effectively nullify the consent implied in subdivision 1 or at least make the statute inherently inconsistent" *(People v Kates, supra,* at 595; *People v Mills, supra; People v Massong,* 105 AD2d 1154). Accordingly, the seizure of blood under the circumstances presented neither implicates the protections of the Federal Constitution nor transgresses relevant statutory procedure applicable to motorists who operate a motor vehicle under the influence of alcohol or drugs.[5]

Furthermore, Vehicle and Traffic Law § 1195 (1), which expressly governs the admissibility of chemical test evidence, is expansively crafted in language which militates against the narrow construction adopted by the hearing court. Vehicle and Traffic Law § 1195 (1)—which in no relevant sense circumscribes the admissibility of properly obtained test results— clearly directs in this respect that, "[u]pon the trial of *any action or proceeding* arising out of actions alleged to have been committed by any person arrested for a violation of any subdivision of section eleven hundred ninety-two of this article, the court *shall* admit evidence of the amount of alcohol or drugs in the defendant's blood" (emphasis supplied). In the

---

5. Although *People v Kates* (53 NY2d 591) predated the enactment of CPL 240.40, the *Moselle* court made no mention of the case in rendering its decision, thereby buttressing the conclusion that its determination was not intended to affect the *Kates* rationale concerning the seizure of blood from an unconscious motorist based upon implied consent. It should be observed, moreover, that limiting the admissibility of the test results to violations of the Vehicle and Traffic Law will in no sense lessen the intrusion to which an intoxicated, unconscious motorist may be otherwise subjected, since the drawing of blood under the circumstances presented here would be entirely permissible even if the results are excluded with respect to the Penal Law offenses charged *(see, People v Kates, supra; People v Hall,* 91 AD2d 1002, *affd* 61 NY2d 834).

face of such a mandate, we perceive no compelling policy which would otherwise justify depriving the jury of such material and probative evidence.

## V.

Finally, the drawing of such an artificial distinction with respect to the admissibility of blood test results could necessitate severance and separate trials on Penal Law and Vehicle and Traffic Law offenses which are inextricably interwoven by virtue of their arising from the same underlying factual transaction. Such a strained construction of the *Moselle* holding would result in a prolixity of proceedings, taxing limited judicial resources. Moreover, in cases where blood is permissibly withdrawn based upon the implied consent of an unconscious motorist, the People would nevertheless be compelled to obtain yet another blood sample—by court order—so as to ensure the admissibility of the test results with regard to Penal Law offenses charged. In such a case—and with respect to the Penal Law offenses charged—the People may be constrained to rely on a court-ordered blood test administered well after the point at which a sample secured through implied consent would be available *(cf., People v McGrath,* 135 AD2d 60, 63, *affd* 73 NY2d 826), depriving the jury of the most accurate measure of a motorist's intoxication in regard to the most serious offenses charged in the indictment. We discern neither statutory mandate nor underlying legislative intendment supportive of such a circuitous and potentially duplicative procedure.

## VI.

In light of the foregoing, and under the circumstances presented, we conclude that the blood test results—here permissibly secured in conformity with an applicable statutory authority—are admissible with respect to both violations of the Vehicle and Traffic Law and crimes charged under the Penal Law.

BRACKEN, J. P., LAWRENCE and SULLIVAN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, and that branch of the defendant's omnibus motion which was to suppress the blood test results is denied.