People v Moreno (2024 NY Slip Op 24116)

[*1]

People v Moreno

2024 NY Slip Op 24116

Decided on April 10, 2024

Supreme Court, Queens County

Miret, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 10, 2024
Supreme Court, Queens County

The People of the State of New York

against
Michael Moreno, Defendant.

Ind. No. 74193-2023

The People by:
Assistant District Attorney Hugh McCann, Esq.
Queens County District Attorney's Office
126-06 Queens Boulevard
Kew Gardens, New York 11415
The Defendant by:
Kyle B. Watters, Esq.
42-40 Bell Blvd, Ste 601
Bayside, New York 11361

Gary F. Miret, J.

Defendant, Michael Moreno, has submitted a motion, dated March 6, 2024, seeking: suppression of blood evidence; inspection and release of the Grand Jury minutes and dismissal or reduction of the indictment; an order controverting the search warrant or a Franks hearing and suppression of blood evidence; suppression of statement evidence; and preclusion of unnoticed statement and identification evidence.[FN1]
The People's response, dated March 22, 2024, consents to some of the relief sought and opposes other relief. The court decides the motion as follows:
MOTIONS TO CONTROVERT THE SEARCH WARRANT 
 AND SUPPRESS THE 

 HOSPITAL BLOOD EVIDENCE
Search warrant Q-0956-23, issued pursuant to CPL § 690.10, authorized the seizure of [*2]blood drawn from the defendant on October 28, 2023, at Elmhurst General Hospital ("hereinafter "EGH") as well as providing the identity of the person who withdrew the defendant's blood sample. This warrant was dated November 13, 2023 and was supported by the affidavit of Police Officer Lauren Pagan. 
In the affidavit, Pagan, a police officer assigned to the 108th Precinct, stated she has been an officer for six and one half years. In this capacity Pagan has been assigned to patrol areas and investigate crimes and other incidents that occur within the 108th Precinct. On October 28, 2023 she responded to the intersection of Queens Boulevard and 47the Street where a multi-vehicle accident had occurred. She observed multiple victims lying on the street and saw a damaged 2013 white Hyundai Genesis and the defendant, shirtless, stumbling nearby. The defendant told Pagan he was the owner and driver of the 2013 white Hyundai Gensis. Pagan also observed that the defendant had bloodshot watery eyes, a light odor of alcohol on his breath and was unsteady on his feet. Relying on her training and experience, Pagan concluded the defendant was intoxicated. Later, Pagan had a further discussion with the defendant during which he told her he had been at a party where he had one to two drinks.
The defendant was then transported by ambulance to EGH for treatment for a head injury he sustained during the collision. There, as he was treated blood was drawn by a nurse for diagnostic and treatment purposes. Meanwhile, Pagan, before leaving for EGH, notified Highway Unit 3 to respond to the hospital to obtain a blood sample from the defendant in order to determine the defendant's blood alcohol content (hereinafter "BAC") when he operated his vehicle. At the hospital, Pagan witnessed the defendant's refusal to provide a blood sample to Police Officer Baldwin from Highway Unit 3 at about 5:56 p.m. Pagan also requested, while at the hospital, a sample of the defendant's that had been taken earlier for medical purposes. However, hospital personnel would not release a sample of the defendant's blood without a warrant.
According to the People's papers, blood was drawn from the defendant by Malda Likovic, an emergency room nurse employed by EGH, at 4:49 p.m. on October 28, 2023. The People also affirm in their response that on October 29, 2023, they sent a letter to EGH to preserve and hold the defendant's hospital blood sample that had been taken for diagnostic and treatment purposes. Thereafter, Pagan executed on November 13, 2023 a warrant issued pursuant to CPL Article 690 and recovered the defendant's blood sample. She later submitted the defendant's hospital blood sample to the Office of the Chief Medical Examiner (hereinafter "OCME") for analysis of his BAC.
In the indictment, the defendant is charged with Aggravated Vehicular Assault (Penal Law § 120.04[-a][4]), Vehicular Assault in the First Degree (Penal Law § 120.04[4]), two counts of Assault in the Second Degree (Penal Law § 120.05[4]), two counts of Criminal Mischief in the Third Degree (Penal Law § 145.05[2]), Reckless Endangerment in the Second Degree (Penal Law § 120.20), three counts of Assault in the Third Degree (Penal Law § 120.00[2]), Operating a Motor Vehicle While Under the Influence as an unclassified misdemeanor (VTL § 1192.3), Reckless Driving (VTL § 1212), and Operating a Motor Vehicle While Under the Influence as an infraction (VTL § 1192.1).
The defendant now moves to controvert the search warrant alleging it was issued without probable cause. In support of his contention, the defendant alleges that the information Police Officer Pagan provided in her affidavit was inaccurate, minimized and misattributed the effect of defendant's head injury as signs of intoxication. He also alleges that the signs of intoxication [*3]Pagan did observe, e.g., slight odor of alcohol on his breath, bloodshot, watery eyes and unsteadiness, were insufficient to establish he operated his vehicle while intoxicated and to establish that evidence of intoxication would be found in his hospital blood.
Although the defendant does not directly move for a Franks/Alfinito hearing, his motion includes allegations that Police Officer Pagan provided inaccurate and misleading information that could be read to request such a hearing. To the extent that the defendant is moving for such a hearing, the defendant has failed to make the necessary factual showing to support his motion to controvert the warrant. To obtain a hearing on a motion to controvert a warrant, a defendant must make a "substantial preliminary showing that the warrant was based upon an affidavit containing false statements made knowingly or intentionally, or with reckless disregard for the truth." (People v Kelly, 153 AD3d 751, 752 [2nd Dept 2017].) The burden of proving Police Officer Pagan made knowingly false and misleading statements or made such statements in reckless disregard for the truth rests with the defendant and he has failed to meet that burden. (see, People v Tambe 71 NY2d 482, 454 [1988]; People v Alfinito, 16 NY2d 181, 186 [1965].) The defendant has not presented any basis to believe that Police Officer Pagan made any false, misleading and inaccurate statements in the warrant application. The factual issues the defendant highlights amount to, at most, a difference in opinion as to the assessment by Police Officer Pagan of the signs of intoxication she observed the defendant exhibit. Although the defendant asserts that the effect of the injuries he sustained were mistaken for signs of intoxication, he has offered no specific basis other than his own speculative and conclusory statements to support his conclusion. None of the defendant's allegations undermined the truthfulness of Police Officer Pagan's statement that the defendant exhibited signs of intoxication in her affidavit. (see People v Watson, 163 AD3d 855 [2nd Dept 2018].) 
Further, the court finds that the warrant was supported by probable cause. In evaluating the probable cause for a search warrant, the question is whether the application contains "sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place." (People v Williams, 187 AD3d 1222, 1222 [2nd Dept 2020] [quoting People v Coleman, 176 AD3d 851, 851 [2nd Dept 2019].) The information in the search warrant application met this standard.
The court also rejects the defendant's arguments that the BAC resulting from the analysis of the defendant's hospital blood sample must be suppressed because it was seized by a warrant that was not issued in accordance with VTL § 1194(4)[FN2]
and the ensuing analysis of the blood sample was done in violation of the regulations contained in 10 NYCRR §§ 59.1 to 59.9. (affirmation of defendant's attorney at 11, 12 and 20). VTL § 1194(3) governs the factual circumstances and legal standards when a compulsory chemical test may be ordered by a court of the breath, blood, urine or salvia of a person. Relatedly, VTL§ 1194(4) sets out the testing procedures when a compulsory chemical test of the blood is authorized by a court. 10 NYCRR §§ 59.1 to 59.9 sets out the administrative rules and regulations that govern the chemical [*4]analysis of blood, urine, breath or salvia. In this case, the defendant was not compelled by any police officer or any other law enforcement official or anyone acting on their behalf to submit to a procedure to draw a blood sample. On October 28, 2023, following a multi-vehicle collision, the defendant was taken to EGH for treatment of a head injury that he sustained during the collision. During his treatment at EGH, a hospital nurse assigned to the hospital's emergency room (hereinafter "the ER nurse") drew blood from the defendant at 4:49 p.m. for diagnostic and treatment purposes, well before Police Officer Baldwin's arrival at 5:30 p.m. Neither Police Officers Pagan nor Baldwin had any role in directing the ER nurse to draw blood from the defendant. Further, no court order was issued to compel the defendant to submit to a blood draw. The court finds the defendant's reliance on the holding of People v Moselle, 57 NY2d 97 (1982) is misplaced. In People v Casadei, 66 NY2d 846 (1985) the Court refused to suppress the results of blood test administered without his consent obtained by a search warrant issued pursuant to CPL § 690.10 in a case in which the defendant was charged with violations of both the Penal Law and the Vehicle and Traffic Law. The court held the People did not have to resort to the requirements of VTL § 1194 to obtain a search warrant. The court stated, "It is clear that a search warrant may validly be issued to obtain a blood sample, in the event of a violation of the Penal Law, and, in such circumstances, we decline to extend Moselle to require separate resort to Vehicle and Traffic Law offenses which are part of the same indictment." Id. at 848. (see also People v Reynolds, 203 AD3d 1079, [2nd Dept 2022].) In this case the defendant was not compelled by the People to provide a blood sample pursuant to VTL § 1194 and is also charged in the indictment with violations of both the Penal Law and the Vehicle and Traffic Law. VTL § 1194(3) and the regulations under 10 NYCCR 59.1 to 59.9 do not apply to the facts of this case since a sample of the defendant's blood was already taken by hospital personnel. (see People v Ameigh, 95 AD2d 367, [3rd Dept 1983][holding that VTL § 1194 did not prohibit admission of BAC results contained in defendant's medical records that were voluntarily disclosed].)
The defendant also points out that the warrant application relied on statements he made to Police Officer Pagan regarding his ownership and operation of the 2013 white Hyundai Gensis to establish his operation of the vehicle. The People have given notice of their intention to offer at trial that statement, as well as other statements, made by the defendant pursuant to CPL § 710.30 (1)(a). In connection with that notice, the court has ordered a Huntley hearing to determine the admissibility of this statement. If the defendant succeeds in suppressing his statement regarding his ownership and operation of the 2013 white Hyundai Gensis, the defendant has leave to renew his motion to controvert the search warrant inasmuch as a statement by a defendant in violation of Miranda cannot be considered in assessing probable cause. (see People v Jackson, 88 AD3d 451 [1st Dept 2011]; People v Wahhab, 84 AD3d 982 [2nd Dept 2011].) 
Relatedly, the defendant moves to suppress the results of the analysis of the defendant's blood sample and any testimony related thereto on several other grounds.
First, the defendant's motion to suppress his BAC based on state action predicated on a hold and preserve letter for his blood the People sent to EGH on October 29, 2023, the day after the defendant's blood as drawn is denied. Under certain circumstances, "[p]rivate conduct . . . may become so pervaded by governmental involvement that it loses it character as such and invokes the full panoply of constitutional protections." (People v Ray, 65 NY2d 282, 286 [1985].) The Court of Appeals has set forth criteria for the type of state involvement that can transform private conduct into state action, such as "a clear connection between the police and [*5]the private investigation", "completion of the private act at the instigation of the police", "close supervision of the private conduct by the police", or a "private act undertaken on behalf of the police to further a police objective." (Id.) Considering the factual allegations in the defendant's motion and, as well as the People's papers, the court finds that none of the indicia of state action are present here. In fact, there is a total absence of any state involvement when the defendant's own physician directed hospital personnel to draw the defendant's blood for diagnostic and treatment purposes the day before EGH received the People's letter requesting EGH to hold and preserve the defendant's blood.
The defendant also argues the People unlawfully seized the defendant's hospital blood sample without a warrant by sending EGH a letter requesting that any blood samples drawn from the defendant be preserved. (affirmation of defendant's attorney at para 40, " . . . by directing the hospital to be their agent and preserve it without a warrant was unlawful.") The defendant's argument is rejected; sending a letter to the hospital to preserve the defendant's blood sample did not amount to a warrantless seizure of the defendant's hospital blood sample. 
The court also rejects the defendant's assertion that his name, and other identifying information through which authenticity of his blood sample can be established should be considered information within the meaning of the physician — patient privilege pursuant to CPLR § 4504. In William v Roosevelt Hospital, 66 NY2d 391 (1985), the court found information which the privilege sought to protect "are confidential communications, not the mere facts and incidents of a person's medical history." Id. at 396. Facts regarding the name of the patient from whom blood was drawn, as well as the date on which it was drawn and the name of the hospital employee who drew the blood are not pertinent to the diagnosis and treatment of the defendant and are not protected by CPLR § 4504. (see also People v Elysee, 49 AD3d 33 [2nd Dept 2007] [" . . . questions such as those designed to elicit information as to whether the patient has been previously treated at a hospital or by a doctor are not protected by the physician-patient privilege." Id. at 38. 
The defendant also requested a hearing to determine whether he voluntarily consented to the taking of the blood sample for the test. This court understands defendant to mean he did not consent to the seizure of his hospital blood sample and its subsequent analysis by OCME for the BAC level. (affirmation of defendant's attorney at para 41) The defendant concedes that as part of his medical care, his physician at EGH ordered blood to be drawn from the defendant for medical diagnosis and treatment. (affirmation of defendant's attorney at para 15) The defendant also concedes, as the People also concede, that the defendant's blood sample was not compelled by a court order issued pursuant to VTL § 1194(3) (affirmation of defendant's attorney at para 18), but seized pursuant to a warrant issued pursuant to CPL 690.10 which this court has determined to be supported by probable cause and lawfully issued and executed. Further, the court finds that the holding in Birchfield v North Dakota, 579 US 438 (2016), on which the defendant relies, concerns a warrantless blood draw the State justified on the basis of a search incident to a lawful arrest based on North Dakota's implied consent law, not a situation such as this one where the police obtained a warrant for a blood sample already drawn by a medical professional for diagnostic or other treatment purposes. The holdings in People v Odum, 31 NY3d 344 (2018) (Refusal that occurs outside two hour period under the deemed consent provision of VTL § 1194[2][a] is inadmissible), and in People v Atkins, 85 NY2d 1007 (1995) (the two hour limitation in VTL § 1194 (2) has no application when the defendant has expressly and voluntarily consented to the administration of the breath test) on which the defendant also [*6]relies, are inapposite to the facts of this case.
If, on the other hand, the defendant contends that the ER nurse who took his blood sample did so without his consent, it is also settled that a seizure by a private person without governmental involvement is not a proper subject for a motion to suppress the evidence obtained thereby. (see People v Ameigh, 95 AD2d 367, 369 [1983] ["Thus, the entire statutory framework simply does not address itself to evidence of blood-alcohol levels derived as a result of bona fide medical procedures in diagnosing or treating an injured driver. In that context, it is apparent to us that the provision in subdivision two of section 1194 that the test shall not be given to a person expressly declining the officer's request does not render inadmissible the results of tests not taken at the direction or on behalf of the police."].) 
Any other evidentiary objections, including chain of custody issues, to the admissibility of the test results obtained by OCME from their analysis of the defendant hospital blood sample may be raised at trial.

INSPECTION AND DISMISSAL OR REDUCTION
Defendant's motion to inspect the Grand Jury minutes is granted. The minutes reveal that a quorum of the grand jurors was present during the presentation of evidence and at the time the prosecutor instructed the grand jurors on the law. The indictment substantially conforms to the requirements set forth in CPL 200.50. The instructions were not defective as a matter of law and the proceedings were proper. Upon inspection of the Grand Jury minutes, this court found the evidence to be legally sufficient to support all counts of the indictment except for counts 5 through 7.
Counts 5, 6 and 7 each charge Criminal Mischief in the Third Degree (Penal Law § 145.05[2]. A defendant is guilty under that subsection when "he intentionally damages property of another person in an amount exceeding two hundred fifty dollars." (Penal Law § 145.05[2].)
Here, the People presented no evidence relating to the defendant's mental state at the time he damaged each of the complainant's vehicles. The fact that the defendant was driving in an intoxicated condition alone is insufficient to prove intent to damage each complainant's car. Accordingly, counts 5, 6 and 7 are dismissed with leave to re-present. Otherwise, the defendant's motion to dismiss or reduce the indictment is denied.
The defendant's motion to release the grand jury minutes is partially moot and otherwise denied. In their supplemental certificate of compliance filed on December 29, 2023, the People certified that they had turned over the grand jury transcript to the defendant in accordance with the requirements of CPL § 245.20(1)(b). Thus, the defendant has received the portion of the grand jury transcript to which he is entitled pursuant to CPL § 245.20(1)(b). Otherwise, the defendant's motion is denied because release of the remainder of the grand jury minutes is not necessary to assist the court in determining defendant's motion to reduce or dismiss the indictment.

MOTION TO SUPPRESS STATEMENT EVIDENCE
The defendant's motion to suppress statements to police officers is granted to the extent that a Huntley hearing is ordered to determine whether the defendant's statements were made in violation of his Miranda rights and whether the statements were involuntarily made within the meaning of CPL 60.45(2). The People consented to a Huntley hearing.
The defendant has also moved for suppression of evidence or a Dunaway hearing, on the basis that the statement was the fruit of an illegal seizure. The factual allegations in the [*7]defendant's motion are insufficient to give rise to a Dunaway hearing. In his motion, the only facts with which the defendant supports his request for suppression on the basis of a lack of probable cause are: "[The defendant] was detained by PO Pagan and other officers at the scene of the accident without a lawful basis for doing so." (affirmation of defendant's counsel at 21)
To obtain a Dunaway hearing, a defendant must allege a sufficient factual basis to demonstrate there was some material factual dispute that requires resolution by such a hearing. (see People v Mendoza, 82 NY2d 415, 426 [1993].) In this regard, the Court of Appeals has explicitly stated, "An allegation that 'I did nothing giving rise to probable cause' is without more, plainly insufficient because probable cause is a mixed legal-factual issue and the pleading lacks the factual portion of the equation." (Id. at 427.)
To obtain a Dunaway hearing, a defendant must allege a sufficient factual basis to demonstrate that there is some material factual dispute that requires resolution by such a hearing. (see People v Mendoza, 82 NY2d 415, 426 [1993].) In this regard, the Court of Appeals has explicitly stated, "An allegation that 'I did nothing giving rise to probable cause' is, without more, plainly insufficient because probable cause is a mixed legal-factual issue and the pleading lacks the factual portion of the equation." (Id. at 427.) Here, the purportedly factual portion of the defendant's motion on this point is nearly identical to the allegation the Court of Appeals deemed "plainly insufficient" in Mendoza. Unsurprisingly, then, this allegation is insufficient to give rise to a Dunaway hearing and the defendant's motion is denied in that regard.

 PRECLUSION OF EVIDENCE
The defendant's motion to preclude any unnoticed statement and identification evidence is denied as premature, as the People have not indicated that any such statements or procedures exist. Should the existence of unnoticed statements or identification evidence comes to light, the defendant is granted to move for its preclusion at that time.
The defendant has failed to make the necessary factual showing to support his motion to controvert the warrant.

 ORDER TO COUNSEL
This court issues this order as both a reminder and a directive that counsel uphold their constitutional, statutory and ethical responsibilities in the above-captioned proceeding:
To the Prosecutor:
The District Attorney and the Assistant responsible for the case, or, if the matter is not being prosecuted by the District Attorney, the prosecuting agency and its assigned representative, is directed to make timely disclosures of information favorable to the defense as required by Brady v Maryland, 373 US 83 (1963), Giglio v United States, 405 US 150 (1972), People v Geaslen, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and pursuant to Criminal Procedure Law (CPL) article 245 and Rule 3.8(b) of the New York State Rules of Professional Conduct, as described hereafter.
• The District Attorney and the Assistant responsible for the case have a duty to learn of such favorable information that is known to others acting on the government's behalf in the case, including the police, and should therefore confer with investigative and prosecutorial personnel who acted in this case and review their and their agencies' files directly related to the prosecution or investigation of this case.
• Favorable information could include, but is not limited to:
a) Information that impeaches the credibility of a testifying prosecution witness, [*8]including (i) benefits, promises, rewards or inducements, express or tacit, made to a witness by a law enforcement official or law enforcement victim services agency in connection with giving testimony or cooperating in the case; (ii) a witness's prior inconsistent statements, written or oral; (iii) a witness's prior convictions and uncharged criminal conduct; (iv) information that tends to show that a witness has a motive to lie to inculpate the defendant, or a bias against the defendant or in favor of the complainant or the prosecution; and (v) information that tends to show impairment of a witness's ability to perceive, recall, or recount relevant events, including impairment of that ability resulting from mental or physical illness or substance abuse.
b) Information that tends to exculpate, reduce the degree of an offense, or support a potential defense to a charged offense.
c) Information that tends to mitigate the degree of the defendant's culpability as to a charged offense, or to mitigate punishment.
d) Information that tends to undermine evidence of the defendant's identity as a perpetrator of a charged crime, such as a non-identification of the defendant by a witness to a charged crime or an identification or other evidence implicating another person in a manner that tends to cast doubt on the defendant's guilt.
e) Information that could affect in the defendant's favor the ultimate decision on a suppression motion.
• Favorable information shall be disclosed whether or not it is recorded in tangible form, and irrespective of whether the prosecutor credits the information.
• Favorable information must be timely disclosed in accordance with the United States and New York State constitutional standards, and in accordance with the timing provisions of CPL article 245. The prosecutor is reminded that the obligation to disclose is a continuing one. Prosecutors should strive to determine if favorable information exists. The prosecutor shall disclose the information expeditiously upon its receipt and shall not delay disclosure if it is obtained earlier than the time period for disclosure in CPL 245.10(1).
• A protective order may be issued for good cause pursuant to CPL 245.70 with respect to disclosures required under this order.
• Failures to provide disclosure in accordance with CPL Article 245 are subject to the available remedies and sanctions for nondisclosures pursuant to CPL 245.80.
• Only willful and deliberate conduct will constitute a violation of this order or be eligible to result in personal sanctions against a prosecutor.
To Defense Counsel:
Defense counsel, having filed a notice of appearance in the above captioned case, is obligated under both the New York State and the United States Constitution to provide effective representation of defendant. Although the following list is not meant to be exhaustive, counsel shall remain cognizant of the obligation to:
a) Confer with the client about the case and keep the client informed about all significant developments in the case;
b) Timely communicate to the client any and all guilty plea offers, and provide reasonable advice about the advantages and disadvantages of such guilty plea offers and about the potential sentencing ranges that would apply in the case;
c) When applicable based upon the client's immigration status, ensure that the client receives competent advice regarding the immigration consequences in the case as required under Padilla v Kentucky, 559 US 356 (2010);
d) Perform a reasonable investigation of both the facts and the law pertinent to the case (including as applicable, e.g., visiting the scene, interviewing witnesses, subpoenaing pertinent materials, consulting experts, inspecting exhibits, reviewing all discovery materials obtained from the prosecution, researching legal issues, etc.), or, if appropriate, make a reasonable professional judgment not to investigate a particular matter;
e) Comply with the requirements of the New York State Rules of Professional Conduct regarding conflicts of interest, and when appropriate, timely notify the court of a possible conflict so that an inquiry may be undertaken or a ruling made;
f) Possess or acquire a reasonable knowledge and familiarity with criminal substantive, procedural and evidentiary law to ensure constitutionally effective representation in the case; and
g) When the statutory requirements necessary to trigger required notice from the defense are met (e.g., a demand, intent to introduce particular evidence, etc.), comply with the statutory notice obligations for the defense as specified in CPL 250.10, 250.20, and 250.30.
This constitutes the decision and order of the court.
The Clerk of the court is directed to distribute copies of this decision and order to the attorney for the defendant and to the District Attorney.
April 10, 2024
GARY F. MIRET, A.S.C.J.

Footnotes

Footnote 1:The defendant also gave notice in his notice of motion of his intent to move this court for an order compelling additional discovery and reserving his right to challenge at a later date the validity of the People's certificate of compliance filed on December 29, 2023. The defendant, however, failed to address this branch of his motion in his attorney's affirmation. Consequently, because the defendant failed to develop in any meaningful way this claim, this court will not address it.

Footnote 2:The defendant's attorney mistakenly cited VTL§ 1192(4) instead of VTL § 1194(4) in ¶ ¶43 and 50 of his affirmation in requesting a hearing to determine whether police officers and other personnel complied with the testing procedures outlined in VTL § 1194(4) and 10 NYCCR §§ 59.2 and 3 when a blood sample is withdrawn at the request of a police officer pursuant to VTL §§ 1194(2) or (3).